My name is Ryan Moore. I represent Mr. Scheu. Scheu, did you say? He pronounces it Scheu. Thank you. I appreciate the correction. I'll reserve two minutes, but I'll watch the clock. This court should remand to the district court to apply the correct interpretation of the term abducted under the sentencing guidelines, which resulted here in an enhancement of approximately six years to the advisory guidelines range. The district court reasoned twice that the the two to two and a half foot tall corn was an abduction simply because it was separate and apart from any movement that would have been required or inherent in the underlying crime. It should have focused instead on what Scheu proposed in his written objection to the pre-sentence report, which was whether the movement involved a significant change in place characterized by either significant isolation, distance, or duration. Let me see if I understand what went on. Please correct me if I'm wrong in any respect. The 14-year-old victim was standing beside the road fully visible to people driving by, correct? She was standing by the road. There's no indication it was anyone driving by, but yes. It was afternoon. She would be fully visible to anyone driving by. Yes. Correct? Correct. Okay. Your client first drives by her, turns around, parks, gets out of his truck, approaches her. She starts to run. Is that correct? Yes, correct. He chases her, grabs her, and drags her 35 to 40 feet into a cornfield where he sexually assaults her. Have I missed anything? No, that's right. 35 feet across open dirt into the cornfield. And it's not clear on the record how far inside the cornfield ground where they were, but correct. Why do you suppose he drug her over there? I'm sorry? Why do you suppose he did that? I can't speculate. To avoid detection? Motive isn't part of the analysis. I understand that. But do you think he was trying to avoid detection? Conceivably, Judge, the other ground nearby is hard, it's dirt. There could be other reasons why he took her there. If he had grabbed her and thrown her in his vehicle, what was he driving? A truck? A small car. Okay. If he had grabbed her, dragged her 35 feet to his car, thrown her in the car, and sexually assaulted her inside the car, would that have been an abduction? Maybe. What's the difference? The difference is that the key fact in this case is the very short height of these plants. It's a wide open area. Excuse me. I didn't hear that part. The key part is what? The short height of these plants. The witness, the investigative detective testified that the plant was 2.5 feet tall. Why is that the key fact as opposed to the distance away from the road? Well, the distance away from the road is also an important fact. They were close to the road. The precise distance from the road to the site of the assault in the corn is not clear from the record. But that is a key fact as well. The proximity to the road, the short height of the corn, it's daylight, it's not dark. She wasn't taken, for example, down an embankment or into a corn that was 12 feet tall. There wasn't 12 foot high corn in the vicinity. But what I don't understand, and maybe you could help me, I think I understand all of the factual circumstances that Judge Hawkins just described. But there's also a berm that's discussed in the photos, and I can't tell whether the dragging 35 feet into the cornfield included being dragged over a berm. It did not. The testimony was that the victim was apprehended at the bottom of the berm and pushed or moved, not dragged, across 35 feet of dirt to the cornfield. So what do you mean at the bottom? I'm sorry, counsel, but at the bottom of the berm? My understanding of the testimony, the berm is a raised area. Right. I know what a berm is. I'm trying to figure out, maybe this is where we're missing. Did the berm run parallel to the roadway? No, it didn't. Okay, then now you've answered my question. Thank you. All right. If the question is harmlessness, there's not enough on the record for the court to know how the district court would have come out had it applied the right standard. All the district court found was that she was moved into the cornfield and that that was a separate asportation. It didn't find anything about isolation, about distance from the road, about how far inside the corn. So if this court concludes that the district court applied the wrong legal interpretation of abduction, then a remand would be needed so the district court could do the analysis in the first instance. The sentencing guidelines recognize that taking a victim to a place that's out of sight for the moment. I know you do not concede that. But the idea that taking a victim to a place that's out of sight can increase the risk of harm to the victim, correct? I think, yes. Okay. So again, you're going to tell me the difference between dragging her into the cornfield or dragging her into his vehicle. You said that that might be abduction, the vehicle. A vehicle is more akin to taking someone into a closed confined space where they can't be seen, where they can't escape, where they can't be heard. What time of year was this? I'm sorry? What time of year? What month? It was rainy. I don't remember the time of month. So maybe the government can tell us that. Yeah. So why is this hard? It just seems to me, I just want to give you every opportunity to respond. If she's dragged 30, 35 feet into a cornfield, regardless of how high the corn was growing, and frankly, regardless of whether there was corn growing at all, she's farther away from the road, and it's much less likely that he's going to be interrupted, more likely the crime would be completed. If my reasoning is really that simplistic, why would it be wrong? Our contention is that that would not be an abduction as the term is normally understood. That would be a carrying away, that would be a moving of the victim. Why wouldn't it be a kidnapping under pretty much every state's law of kidnapping, which is similar to the term abduction? Well, it could be a kidnapping, again, depending on the analysis of, now we're shifting to the second argument, but the Jackson case of those four factors. Well, counsel, you said that we should look at the ordinary meaning of abduct, and the ordinary meaning of abduct is kidnap. At least that's one ordinary understanding of it. Our argument is that it must have a different meaning than kidnap, because the federal kidnapping statute uses both kidnaps, abducts, and carries away as alternative means of committing that offense. Therefore, they must have different meanings, and that's how this court has interpreted those means of commission. But there's no dispute, is there, that she was carried away against her will? Correct. Okay. Do you want to save some time for rebuttal? Yes. Okay. Thank you. Good morning. May it please the court, Shelley Clemons on behalf of the United States. Can you pull those mics right down to you? I will. Thank you. I have to put my heels on. Your Honor, this court should affirm the district court's sentence, because in this court, the district court did not err in applying the four-level enhancement for abduction pursuant to the sentencing guidelines in this case. As Your Honor has noted, in this case, the defendant saw the victim on the side of the road as he was driving by. He approached her. He then chased her down when she ran away. He grabbed her. He then drug her 35 to 40 feet inside that cornfield, where he forced her to the ground, and then he Because that particular act by the defendant, forcing a victim to accompany him to that cornfield where he then raped her, met both common law definition, the common ordinary meaning of abduct, as well as the guidelines definition of that offense. I just want to be clear, the government's not counting the distance that she ran and he chased her, that 30 to 35 feet. You're counting the 30, I'm going to say 35 feet, which is an approximation. That's the distance between the time after he caught up to her and where he dragged her. Is that right? That is correct. Although, now that Your Honor raises this, I guess because other courts have found that force can include inveigling, that is basically actions by the defendant to overcome the victim's will. In this case, he forced her to move approximately 40 feet away and then grab her. Seriously, lose me if you go there, I'll tell you. Because she saw him and she did what parents teach their daughters to do. She trusted her instincts and she ran, as far as I can tell. That is correct. So I'm excluding that, or at least not, I don't think we need to decide that. If I'm right, that it was from the distance, from the time he caught up to her, he moved her against her will, which I appreciate opposing counsel's frank concession on that point. Moved her against her will 30 to 35 feet. That's the distance we're talking about. That is the distance we're talking about. Okay, Your Honor. Were you able to, I saw you shuffling through your papers, tell us what time of year this happened? Yes, it was November 12th, 2004. So, winter. But the government doesn't dispute that it was during the day, although it had been, I believe counsel said it was raining that day. No, I was just trying to figure out in my own head how long this corn had been growing. I'm afraid I'm not an expert on corn, Your Honor. The testimony was that it was approximately two to two and a half feet. The officer testified it was approximately up to or above her knees. So, this goes to the question of why he took her into the corn field, which is clearly so that he could commit this rape without detection, without being isolated by, or without being seen by others who might drive by. In addition, he also isolated her. When she's down on the ground, she can't see if anybody's out there. She's further away from the road, so she can't call for help necessarily effectively. And all of that accomplished a psychological harm and fear to this young girl, who then suffered a brutal rape at his hands, which he was able to And in fact, the officer drew a diagram, a Hatton diagram, which is not to scale, but when she noted where the depressed ground was, it's not at the edge of the field, it's in that top corner within the field. And if anybody's ever taken their kid to a corn maze, you know, once you get in it, eyeline, you can't see, and down on the ground, she can't see. There's some dispute in the case law around the country, including from the Supreme Court, about whether dealing with the guidelines, you look just at the guideline and not rely on the commentary. Is it the government's position in this case that you don't have to rely on the applies to these facts? I think your honor, whether you rely on the guideline or you rely on commentary, you come to the same result that an abduction occurred in this case. Because the common meaning of abduction is to basically take a person away by force. Well, I think Judge Graber capitalized. But in this case, the guidelines are still authoritative. Kaiser did not change that and understands them. The guidelines are still authoritative, whether or not the word abduct, if this court determines it's ambiguous or not, because it provides guidance to the court and interpretation of how the word abduct is to be used. So either way, the district court did not err by applying the guideline in this particular case. Are we talking about how much deference to give to the guideline or how much deference to give to the commentary to the guideline? Well, we're talking about deference, we're talking about commentary to the guideline, my understanding. Your honor, in this particular case, the actions of the defendant caused the victim to be isolated. The district court did not err by applying the guideline in this case. The defendant's efforts to require that this be a substantial leading away or that there be protracted custody or captivity or significant isolation, in fact, violates this court's rules on traditional statutory construction that we don't rewrite the statutes. And that's, in fact, what the defendant is asking this court to do. And in fact, other circuits have analyzed this particular abduction and found that very minimal movement was sufficient. For instance, in Kills and Water, which was the Eighth Circuit, the victim was moved, the abduction started outside the trailer, she was moved into an abandoned trailer. And the court noted, yes, there was an isolation once the trailer was, she was inside. However, they found still there was an abduction, even though there was very little movement. Similarly, in Hawkins in the Fifth Circuit, where there was attempted carjacking, and they basically moved the defendants or the victims, not from inside vehicles in the parking lot, but from next to vehicles on one side of the parking lot to other, I believe the testimony is approximately 40 to 50 feet. And in that case, the Fifth Circuit had no problem finding that there was a difference, a change in location. And in this case, when the defendant moved this victim, he changed the qualitative nature, the character of where she was at. Just as if, as Your Honor pointed out, if he had taken her to the car and returned, the distance is no different, both effects recurred. And as the commentary notes an example, moving a bank teller from inside the bank to a getaway car would count because there's two different locations. Although ostensibly, that could be a very short movement. So Your Honor, in this case, we believe the district court did not err, and we ask that you affirm the sentence. The court has no further questions the government will submit. Judge Weber, do you have any questions? No, I don't. Thank you. Okay. Thank you, counsel. Your Honor, the definition of abduction that we're proposing is not dependent on distance. It's personally due to the fact that the height of the court doesn't matter. It's the distance traveled that makes matters real. It was hypothetical. I appreciate there was a court in there that was two and a half feet. I was just trying to tease out how important that was, because you said, counsel, that was your key fact. And I'm just trying to push back on that. The, our contention is that the common, an ordinary speaker of English would understand abduction as opposed to kidnap, carried away, all the other words that might apply, as involving more than movement within the same vicinity or this type of environment. And this court's cases over the past 30 years have used abduction, I'll read in passing, in that same sense, to another country, to a hotel for captivity, away from one's home. The circuits that we, on the side of the split that we rely on, have interpreted abduction under the robbery guideline to not apply to movement unless the movement is outside of the place to other than the place being robbed. That's consistent with our proposed understanding of abduction and the other circuits on the other side of that split that have interpreted abduction in the robbery context to apply even to movement within a different spot in the bank to the vault area, to some other area. Those have applied what those courts have called a flexible interpretation that is susceptible to multiple interpretations. And that's directly contrary to the rule of lenity, which the circuit applies to the guidelines. So, an individual is in an elevator alone, and it comes to a floor, and the victim is standing waiting for the elevator. And the individual reaches outside the elevator and grabs the victim in, closes the elevator door, and assaults the victim. That would be abduction? Abduction, because that would... Even though the victim was moved like three feet? Yes, even though the distance was short because of the significantly isolating change in the nature of the environment, which is what we're missing here. And it may be that if the district court applies the right standard, the district court could conclude that there was an abduction. But the district court just applied a legal test or standard of whether there was movement that was separate from the underlying crime. What do you think the test should have been? What questions should the district court have asked exactly? Whether there was a significant change in location, characterized by significant isolation, or distance, or duration. Isolation, distance, or duration? The judge made no findings about isolation at all in this case. So, there's not enough for this court to determine that the judge would have found isolation had the district court applied the right standard. You're over your time. Let me just check. Are there any additional questions? No. Would you like to wrap up? Anything? Judge, we submit this as a closed case for isolation and request the district court review the analysis under the right standard. Thank you. Thank you both for your very helpful arguments and briefing. We'll take that case under advisement and move on to the next case on the calendar.
judges: HAWKINS, GRABER, CHRISTEN